UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| VERSUS | NO. 15-295 |
| CALVIN ALEXANDER | SECTION "I" (2) |

## ORDER AND REASONS ON MOTION

This is a criminal prosecution in which defendant Calvin Alexander is charged together with a co-defendant in a six-count superseding indictment. The charges against Alexander include conspiracy to distribute heroin and cocaine, distribution of heroin resulting in the death of a user, two separate first degree murders, conspiracy to commit murder-for-hire and conspiracy to obstruct justice. Record Doc. No. 79.

Defendant issued subpoenas duces tecum to three local prisons in which Don Raines, a federal inmate and government witness against Alexander, has been incarcerated. The subpoenas seek production to Alexander's counsel of the following materials: "1 - copies of the up-to-date incarceration records of federal inmate Don Raines; and 2 - copies of the up-to-date recorded phone calls of federal inmate Don Raines." Record Doc. Nos. 153 at pp. 1, 3; 157 at p. 1.

After a conference was conduced by me concerning the subpoenas, Record Doc. No. 151, the United States filed a Motion to Quash Defendant's Subpoenas Duces Tecum. Record Doc. No. 156. Defendant filed a timely written opposition memorandum. Record Doc. No. 159. Having considered the record, the applicable law and the written submissions of counsel, **IT IS ORDERED** that the motion is GRANTED IN PART AND

DENIED IN PART.  While the subpoenas are overly broad as written and in significant part constitute a prohibited discovery fishing expedition, a subset of the requested items is material both to an asserted defense and more significantly to defendant's efforts to impeach Raines at trial.

Ironically, in a criminal case – where a person's very liberty is at stake – pretrial discovery is more restrictive than in a civil case – where the recovery of money is usually the only issue.  Unlike civil discovery, where mere relevance to claims or defenses and proportionality is the discovery standard, Fed. R. Civ. P. 26(b)(1), a defendant in a criminal case may receive the kind of discovery sought by these subpoenas only if the requested "item is material to preparing the defense." Fed. R. Crim. P. 16(a)(1)(E)(i) (emphasis added).  A criminal defendant bears the burden of showing "some indication that pretrial disclosure of the disputed evidence would have enabled the defendant significantly to alter the quantum of proof in his favor."  United States v. Ross, 511 F.2d 757, 763 (5th Cir. 1975); accord United States v. Dobbins, 482 F. App'x 35, 41 (6th Cir. 2012); United States v. Caro, 597 F.3d 608, 621 (4th Cir. 2010); United States v. Jordan, 316 F.3d 1215, 1251 (11th Cir. 2003).  However, a mere "abstract logical relationship to the issues in the case" is insufficient to require production.  Ross, 511 F.2d at 762.  Evidence is considered material only "as long as there is a strong indication that it will play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal."  Caro, 597 F.3d at 621 (quoting United States v. Lloyd, 992 F.2d 348, 351 (D.C. Cir. 1993) (emphasis added)); accord United States v. Clingman,

521 F. App'x 386, 392 (6th Cir. 2013); United States v. Gladdis, 877 F.2d 605, 611 (7th Cir. 1989).

As to subpoenas, in United States v. Nixon, 418 U.S. 683 (1974), the United States Supreme Court authoritatively adopted the approach previously taken by lower federal courts in establishing "certain fundamental characteristics of the subpoena duces tecum in criminal cases" and a "required showing" and "test" by which its proper use must be evaluated. Id. at 698-99. The Supreme Court stated that the subpoena Rule applicable in criminal cases, Fed. R. Crim. P. 17, "was not intended to provide a means of discovery . . . . [I]n order to require production prior to trial, the moving party must show: (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general 'fishing expedition.'" Id. at 699. Thus, "to carry his burden, [the party issuing the subpoena] must clear three hurdles: (1) relevancy; (2) admissibility; (3) specificity." Id. at 700.

Some courts have identified the characteristics of subpoenas that constitute impermissible "fishing expedition" discovery devices in criminal cases to include absence of information as to the contents or nature of the materials sought, failure to show a likelihood of the existence of the materials, overly broad-ranging requests and lack of specificity, particularity and detailed description of the materials sought. E.g., United

States v. Carriles, 263 F.R.D. 400, 404-05 (W.D. Tex. 2009) (citing Nixon, 418 U.S. at 700-02; Bowman Dairy Co. v. United States, 341 U.S. 214, 220 (1951); United States v. Arditti, 955 F.2d 331, 346 (5th Cir. 1992); Black v. Sheraton Corp., 564 F.2d 531, 545 (D.C. Cir. 1977); United States v. Skilling, Crim. No. H-04-025, 2006 WL 1006622, at *2 (S.D. Tex. Apr. 13, 2006); United States v. Ruedlinger, 172 F.R.D. 453, 456 (D. Kan. 1997)).

In this case, the subpoenas issued by Alexander, as written, suffer from some of these shortcomings. The subpoenas are broad in the extreme in seeking <u>all</u> of the incarceration records and recorded phone calls of Raines during his imprisonment. This kind of overly broad subpoena production language lacks the specificity required by Nixon. An inmate's "incarceration records" typically include such irrelevant items as an inmate's requests for and records of medical ailments and treatment; internal classification, security and administrative information generated by prison officials; an inmate's grievances about conditions of his confinement and official responses to them; his interactions with correctional officers and his visitation and contacts with family members. An inmate's "recorded phone calls" are likely to include personal discussions with family members and privileged conversations with counsel. No explanation has been provided by defendant as to why <u>all</u> such records might be relevant or admissible, much less material, as to anything involved in this case. Thus, the government's motion is granted in part in that the subpoenas are quashed as written.

However, as explained by defendant in his opposition memorandum, the <u>specific</u> aim of the subpoenas is to obtain materials necessary <u>both</u> to impeach Raines's anticipated testimony at trial <u>and</u> to support his pending motion to dismiss the indictment, both purposes focused exclusively upon "the outrageous conduct of [DEA Special Agent Chad] Scott in this case." As to impeachment at trial, defendant argues that the extent to which Agent Scott "manipulated and brought undue pressure upon Don Raines to parrot the false storyline fed to him by . . . Scott [and] what undue influence . . . Scott may have brought to bear upon Raines" will be revealed in the subpoenaed materials. Record Doc. No. 159 at pp. 2-3. Defendant convincingly and in good faith argues that some of the records sought through these subpoenas are reasonably anticipated to establish the extent to which "Scott was interfacing with Don Raines" in connection with this prosecution, so that Raines may be impeached at trial.

Defendant's argument concerning Scott's allegedly coercive conduct, which will serve as a basis for impeachment of Raines at trial, is not mere speculation, as the government's motion suggests. The fact that Scott's conduct concerning witness and evidence influence of the type alleged by defendant is the subject of Justice Department action against him has been made public. The government in part argues that subpoenas may not permissibly be used to obtain only impeachment evidence and cites the decisions of several other courts to that effect. However, the Supreme Court in <u>Nixon</u> imposed no such limitation on what might be obtained through a permissible subpoena, and some circuit courts, including the Fourth Circuit in <u>Caro</u>, the D.C. Circuit in <u>Lloyd</u>, the Sixth

Circuit in Clingman, and the Seventh Circuit in Gladdis, all cited above, have noted that evidence assisting impeachment at trial may well be material and therefore discoverable in criminal cases. Certainly, impeachment evidence also qualifies as Brady material. Strickler v. Greene, 527 U.S. 263, 280 (1999) (citing United States v. Bagley, 473 U.S. 667, 676 (1985)); United States v. Valas, 822 F.3d 228, 236-37 (5th Cir. 2016). The government's footnoted argument that the subpoenas "also run afoul" of Fed. R. Crim. P. 17(h) and 26.2 and the Jenks Act, 18 U.S.C. § 3500(a), Record Doc. No. 156-1 at p. 7, n. 3, is unpersuasive because the subject materials do not appear to be "statements" within the meaning of those rules. In short, a narrower subset of what is sought in the current subpoenas is material to the defense and discoverable within the standards set out above.

Fed. R. Crim P. 17(c)(2) provides that "the court may quash or modify the subpoena if compliance would be unreasonable." (Emphasis added). In addition, Fed. R. Crim. P. 17(c)(1) provides: "The court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence." Accordingly,

**IT IS ORDERED** that the motion is GRANTED IN PART, in that no responses to the existing overly broad subpoenas, as currently worded, are required, but it is also DENIED IN PART insofar as it requests that the subpoena be quashed in its entirety such that no production of any kind might be required. Instead,

**IT IS ORDERED** that the subpoenas are modified as follows: No later than **November 9, 2016**, the custodians of records for the St. Bernard Parish Prison, the St. Tammany Parish Prison and the Tangipahoa Parish Jail must produce incarceration records

and recorded phone calls of federal inmate Don Raines, <u>but limited to and only to the extent</u> that they reflect or concern meetings, communications or interactions between Raines and DEA Case Agent Chad Scott. If no such records are in the possession, custody or control of the records custodians, a verified statement clearly saying so must be provided by that date. In addition, to address the security concerns expressed by the government in its motion papers, Record Doc. No. 156-1 at pp. 7-8, the subpoenas are further modified to provide that the subpoena recipients must produce responsive materials, if any as limited above, directly to my chambers, Room B-409, 500 Poydras Street, New Orleans, Louisiana, where they may be viewed only by counsel of record by appointment. No copies of any of the subpoenaed materials may be made until the Friday afternoon before trial and the use and dissemination of any such materials is restricted to trial of this case.

New Orleans, Louisiana, this ___2nd___ day of November, 2016.

                                                  JOSEPH C. WILKINSON, JR.
                                         UNITED STATES MAGISTRATE JUDGE

CLERK TO NOTIFY:
HON. LANCE M. AFRICK