**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**UNITED STATES OF AMERICA**                    **CRIMINAL ACTION**

**VERSUS**                                                          **No. 15-295**

**CALVIN ALEXANDER**                                  **SECTION I**

## ORDER AND REASONS

Before the Court is the defendant's motion[1] to dismiss the indictment or, in the alternative, to sever certain counts in the indictment.  For the following reasons, the motion is denied.  Although the briefs on the motion were filed under seal, the Court sees no need to seal its order resolving Alexander's motion.

### OUTRAGEOUS GOVERNMENT CONDUCT

Defendant first argues that prosecutors have unfairly forum-shopped in order to have defendant's charges allotted to this section of the Court.  According to the defendant, the forum-shopping combined with the alleged misconduct of DEA Special Agent Chad Scott warrants dismissal of all charges.

First, the Court is not convinced that the government acted improperly by dismissing charges in other sections of this Court in order to consolidate all charges against the defendant and his co-defendants in this section.  Defendant argues that from a chronological perspective it would have made more sense for the government to file the charge relating to the death of Eric Ferrara in Section J and the homicide

---

[1] R. Doc. No. 110.

charges relating to the deaths of Quandell Beard and Elliot Smith in Section A. Although it could be second-guessed, the government has offered a plausible explanation for acting as it did.[2]  The fact that the most serious charges against any of the defendants were those pending before this section is an acceptable reason for the government to choose this section for consolidation.

But—more importantly—even if the prosecutors did act improperly (a finding not made), defendant has admitted, not once but twice, that he has suffered no prejudice from any prosecutorial misconduct.  *See* R. Doc. No. 110, at 11 ("Defendant Alexander is not hereby asking to have his case transferred to either Section A or J. Alexander has no doubt whatsoever that this Court will treat him fairly and impartially."); R. Doc. No. 129, at 6 ("The government correctly observes, as did counsel in his initial memorandum, that the defense has suffered no prejudice by the section transfer.").

In *U.S. v. Osum*, the Fifth Circuit considered allegations of forum-shopping by the government.  943 F.2d 1394 (5th Cir. 1991).  The prosecution in *Osum* had requested that a randomly-allotted case be transferred to another section of court

---

[2] *See* R. Doc. No. 125, at 10-14.  In its motion to dismiss the single-count indictment before Section J charging Alexander with distribution of heroin, the government's stated reason for seeking the dismissal was that "[t]he criminal conduct which forms the basis of [the] count [pending before Section I related to the death of Eric Ferrara] is largely identical to the conduct charged in the instant case."  *United States v. Alexander*, Criminal Action No. 15-250 (E.D. La. 2016), R. Doc. No. 36, at 2.  In its motion to dismiss the indictment against Alexander's co-defendant, Baron Smith, before Section A, the government's stated reason was that Smith had agreed to plead guilty to the first degree murders of Quandell Beard and Elliot Smith in this section. *United States v. Smith*, Criminal Action No. 15-253 (E.D. La. 2016), R. Doc. No. 29, at 1-2.

supposedly more familiar with the alleged conspiracy, as it had already accepted guilty pleas from approximately forty of the defendant's co-conspirators.  *Id.* at 1398. The district court granted the motion over the defendant's objection.  *Id.*

On appeal, the Fifth Circuit observed that the government had offered a "legitimate reason" for the transfer, and twice in its opinion the court noted that the defendant had made no showing of prejudice caused by the transfer.  *Id.* at 1400, 1401.  Given those findings, and in spite of its observation that the government's actions had worked "counter to the . . . purpose of the [random allotment] system to some extent," the court held that there was no reversible error.  *Id.*; *see also Sinito v. U.S.*, 750 F.2d 512, 515 (6th Cir. 1984) (cited favorably in *Osum*, 943 F.2d at 1399 n.1, n.2) ("Even when there is an error in the process by which the trial judge is selected, or when the selection process is not operated in compliance with local rules, the defendant is not denied due process as a result of the error unless he can point to some resulting prejudice.").

In this case, as in *Osum*, there is a plausible explanation for the government's actions.  Considering that explanation, as well as the fact that the defendant himself admits that he has not been prejudiced by the prosecutors' alleged misconduct, there is no need to transfer the case or dismiss the charges against him on that basis.

Alexander acknowledges as much, but argues that the prosecutorial misconduct *combined with* Agent Scott's alleged misconduct should be sufficient to require dismissal.  *See* R. Doc. No. 129, at 6 ("Undersigned counsel clearly pointed out in his initial memorandum that the section transfer, standing by itself, was not

the reason why the motion to dismiss was filed.  Rather, the prejudice to the defendant came from the illegal manipulations of SA Scott to create a federal case and came from the joining of the unrelated charges of heroin distribution/accidental death and homicide.").  The Court cannot accept that position either.

There is nothing improper about the government's decision to try together all of the counts charged in the second superseding indictment.  With respect to the defendant's allegations that Agent Scott manipulated witnesses or otherwise behaved outrageously in assembling the case against Alexander, such unsupported allegations do not rise to a level which would require the extreme remedy of dismissal.

"Government misconduct does not mandate dismissal of an indictment unless it is 'so outrageous' that it violates the principle of 'fundamental fairness' under the due process clause of the Fifth Amendment."  *United States v. Johnson*, 68 F.3d 899, 902 (5th Cir. 1995) (citing *United States v. Russell*, 411 U.S. 423, 431–32 (1973)).  Such a violation will only be found "in the rarest circumstances."  *Id.*  Because meeting the standard "is extremely demanding," *United States v. Sandlin*, 589 F.3d 749, 758 (5th Cir. 2009), "courts have rejected its application with almost monotonous regularity," *United States v. Nolan-Cooper*, 155 F.3d 221, 230 (3d Cir. 1998).

This Court has neither located nor been directed to a single Fifth Circuit decision affirming dismissal on such a basis.  The Fifth Circuit has instead rejected outrageous conduct dismissals "where the Government failed to disclose that the defendant's signature on a particular document was forged, engaged in entrapment,

or abducted the defendant from his home country to circumvent extradition proceedings." *Sandlin*, 589 F.3d at 759 (citations omitted).

Moreover, the Fifth Circuit has held that "a defendant claiming outrageous government conduct bears an extremely high burden of proof, and must demonstrate, in light of the totality of the circumstances, both substantial government involvement in the offense and a passive role by the defendant." *United States v. Gutierrez*, 343 F.3d 415, 421 (5th Cir. 2003) (citation omitted). "The requirement that the defendant play only a passive role means that a defendant who actively participates in the crime may not avail himself of the defense." *Id.*; *see also id.* at 422 ("Moreover, the district court rightly concluded that Gutierrez asserted nothing that would imply that his participation in the enterprise was passive, thereby removing the outrageous government misconduct claim from his reach.").[3]

The Ninth Circuit has taken a similar approach, explaining in *United States v. Black* that a dismissal for outrageous conduct would be appropriate where "government agents . . . engineer and direct a criminal enterprise from start to finish, [where] the government [uses] excessive physical or mental coercion to convince an individual to commit a crime, [or where] the government [] generate[s] . . . new crimes

---

[3] Accordingly, it is uncertain whether the Fifth Circuit would ever approve of a dismissal for outrageous government conduct where the misconduct took place *after* the alleged offenses. Alexander argues that Agent Scott coerced his co-defendants and two confidential witnesses into implicating Alexander, stole money from Alexander's wife while executing a search warrant, and that Agent Scott has essentially worked to frame Alexander for the murders of Quandell Beard and Elliot Smith. *See* R. Doc. No. 110, at 14. All of this alleged misconduct occurred after the offenses detailed in counts 1 through 5 of the indictment were allegedly committed.

merely for the sake of pressing criminal charges." 733 F.3d 294, 302 (9th Cir. 2013) (citations omitted).

When compared to those examples, it becomes clear that the defendant's allegations of misconduct against Agent Scott, which at this point constitute no more than guesswork and are the subject of an ongoing investigation, do not warrant dismissal of the charges. Unlike the cases where the Ninth Circuit found dismissal appropriate due to government misconduct, *see Black*, 733 F.3d at 302, and the hypothetical situation the Fifth Circuit recognized could merit dismissal, *Gutierrez*, 343 F.3d at 421, the misconduct alleged against Agent Scott took place after the commission of the alleged offenses—not before. *See Black*, 733 F.3d at 302. This is not the "rarest of circumstances," *Johnson*, 68 F.3d at 902, where the "fundamental fairness" of prosecuting Alexander has become undermined, *id.* Furthermore, as the government points out, it is not possible that all of the government's evidence in this case could have been tainted by Agent Scott (assuming, of course, that there is tainted evidence in the first place).[4]

---

[4] Notwithstanding any evidence that was personally adduced by Agent Scott, the government claims to have other evidence that Alexander committed the alleged offenses including:

- security footage of a gold-colored SUV matching the one owned by Alexander's wife at the scene of the crime,
- telephone records evidencing calls between Alexander and his co-defendants before and after the shooting,
- cell tower records placing Alexander and co-defendant Baron Smith in the vicinity of the murders,
- the presence of Detective Dale Athmann—a law enforcement agent against whom no allegations of wrongdoing have been made—at the recorded interview in which Alexander's co-defendant, Don Raines, implicated Alexander, and

Moreover, "[t]he traditional remedy for pre-trial illegal government conduct is the exclusionary rule, which serves to deny 'the government the fruits of its exploitation of any deliberate and unnecessary lawlessness on its part.'" *United States v. Fernandez*, 500 F. Supp. 2d 661, 665 (W.D. Tex. 2006) (quoting *United States v. Toscanino*, 500 F.2d 267, 275 (2d Cir. 1974)).  If defendant's allegations against Agent Scott prove to be correct, exclusion, not dismissal, may be the appropriate remedy.

An evidentiary hearing is unnecessary to conclude that dismissal is inappropriate.  Alexander is only entitled to an evidentiary hearing if he alleges facts that, if true, would constitute outrageous government conduct requiring dismissal, *Chapa-Garza*, 62 F.3d at 121, and if the allegations are more than mere conclusory assertions "founded upon mere suspicion or conjecture," *United States v. Harrelson*, 705 F.2d 733, 737 (5th Cir. 1983).  For reasons stated herein, Alexander cannot meet that standard and no evidentiary hearing is necessary.

### SUFFICIENCY OF THE INDICTMENT

Count 1 of the second superseding indictment charges Alexander with conspiracy to distribute and to possess with the intent to distribute heroin and cocaine base and count 2 charges him with distribution of heroin resulting in the death of Eric Ferrara.  Counts 3 and 4 charge Alexander with the first degree murders of Quandell Beard and Elliot Smith in the course of using and carrying a firearm

---

- the unchallenged existence of a motive for Alexander to orchestrate the deaths of the victims, Elliot Smith and Quandell Beard.

during and in relation to a drug trafficking offense, count 5 charges him with conspiring to use interstate commerce facilities in the commission of a murder-for-hire scheme, and count 6 charges him with conspiracy to obstruct justice.[5]

Alexander argues that counts 3 and 4 must be dismissed because 18 U.S.C. § 924(j) requires that the murders be committed "in the course of" a drug trafficking crime, and that essential element, even accepting the government's allegations as true, is not met as a matter of law.[6] Alexander also moves to dismiss count 5, arguing that no murder-for-hire scheme took place because the evidence that he paid his co-defendants in heroin to aid with the murders is unsubstantiated.

Pursuant to Rule 12(b) of the Federal Rules of Criminal Procedure, "at any time while the case is pending," the court may hear a claim that the indictment or information fails to invoke the court's jurisdiction or to state an offense.  Under Rule 7(c) an indictment must contain a "plain, concise and definite written statement of the essential facts constituting the offense charged."  Fed. R. Crim. P. 7(c).  "As long as the statute contains the essential elements of the offense, utilizing the statutory language in the indictment is a generally accepted practice."  *United States v. Johnson*, No. CR 14-238, 2016 WL 930947, at *3 (E.D. La. Mar. 11, 2016) (citing *United States v. Gordon*, 780 F.2d 1165, 1169 (5th Cir. 1986)).  Since the purpose of the indictment is to fairly inform the defendant of the charge(s) against him, the

---

[5] R. Doc. No. 77.

[6] 18 U.S.C. § 924(j) criminalizes a murder committed "in the course of" violating 18 U.S.C. § 924(c)(1)(A), which makes it an offense to use or carry a firearm during and in relation to a drug trafficking crime.

government is not required to prove the charges in the indictment. *United States v. Cavalier*, 17 F.3d 90, 92 (5th Cir. 1994). When deciding a motion to dismiss, the Court notes that the "allegations of the indictment must be taken as true." *Johnson*, 2016 WL 930947, at *3 (citing *Boyce Motor Lines v. United States*, 342 U.S. 337, 343 n.16 (1952); *United States v. Mann*, 517 F.2d 259, 266 (5th Cir. 1975)).

First, to the extent that Alexander seeks dismissal of counts 3, 4, and 5 because the government's evidence is not credible or sufficient, that claim must be rejected. As explained, a defendant may not challenge an indictment, sufficient on its face, on the ground that the allegations are not supported by adequate evidence. *Mann*, 517 F.2d at 267. While this Court has the power to acquit a defendant after a guilty verdict when no rational jury could have found the essential elements of the offense beyond a reasonable doubt, *United States v. Alarcon*, 261 F.3d 416, 421 (5th Cir. 2001), this Court cannot determine before trial and without an evidentiary record what a rational jury could or could not find, *see* Fed. R. Crim. P. 12(b)(1) ("A party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits."). Simply put, "[t]here is no federal criminal procedural mechanism that resembles a motion for summary judgment in the civil context." *See United States v. Yakou*, 428 F.3d 241, 246 (D.C. Cir. 2005).

But Alexander also argues with respect to counts 3 and 4 that the government's allegations, even if true, do not state an offense under 18 U.S.C. § 924(j). He argues that, as a matter of law, murders are not committed "in the course of" a drug trafficking crime where the drugs provided as payment for the murders do not change

hands until *after* the shooting.  Alexander also argues that even if he was originally targeted by Smith and Beard because he is a drug dealer, his retaliatory murder of Smith and Beard had nothing to do with drugs and, therefore, it could not have been committed "in the course of" his drug trafficking offense as a matter of law.

Section 924(j) provides, in pertinent part, that "A person who, *in the course of* a violation of subsection (c), causes the death of a person through the use of a firearm, shall[,] if the killing is a murder (as defined in section 1111), be punished by death or by imprisonment for any term of years or for life."[7] (emphasis added).   Count 3 provides:

> On or about October 9, 2015, in the Eastern District of Louisiana, the defendants, BARON SMITH, a/k/a "Gee Gee," and CALVIN ALEXANDER, a/k/a "Payday," a/k/a "Cardee," and others known and unknown to the Grand Jury, aided and abetted by each other, did knowingly use and carry firearms, during and in relation to a drug trafficking crime, to wit; a conspiracy to distribute heroin and cocaine base, in violation of Title 21, United States Code, Section 841(a)(1), 841(b)(1)(C), and 846 and in the course of this violation caused the death of Quandell Beard through the use of a firearm, whose killing is murder as defined in Title 18, United States Code, Section 1111, in that the defendants, . . . with malice aforethought, did unlawfully kill Quandell Beard willfully, deliberately, maliciously, and with pre-meditation; all in violation of Title 18, United States Code, Section 924(j)(1) and Title 18, United States Code, Section 2.

R. Doc. No. 77, at 2-3.  Count 4 is substantially identical except that it is premised on the death of Elliot Smith.

---

[7] As previously stated, 18 U.S.C. § 924(c)(1)(A) makes it an offense to use or carry a firearm during and in relation to a drug trafficking crime.

The language in counts 3 and 4 of the second superseding indictment tracks Section 924(j). All of the required elements of the offenses[8] are listed and that is sufficient to withstand a motion to dismiss. Alexander's challenges relating to the provision of drugs post-offense and the motivation for the crime are not properly considered at this time because those factual allegations are not contained in the indictment. Only the facial validity of the indictment can be challenged through a Rule 12(b) motion. *See Mann*, 517 F.2d at 267 ("Since the evidence in question has no bearing on the facial validity of the indictment, the district court erred in considering it when deciding whether the indictment alleged a criminal offense."). "[E]vidence outside of the indictment . . . is irrelevant to a determination of whether the indictment itself is legally sufficient." *Id.* Because counts 3 through 5 of the indictment are facially valid, Alexander's motion to dismiss them is denied.

## SEVERANCE

Defendant argues that even if the Court declines to dismiss the indictment, it should nevertheless sever counts 1 and 2 from counts 3 through 6. He argues that counts 1 and 2, the counts related to drug trafficking and the death of Ferrara, have nothing to do with the remaining counts which all pertain to the alleged murders of Smith and Beard.

Rule 8 of the Federal Rules of Criminal Procedure governs the joinder of multiple offenses and defendants in the same indictment. Rule 8(a) allows an

---

[8] *See* R. Doc. No. 77, at 2-3. The same is true for count 5, which charges Alexander with a violation of 18 U.S.C. § 1958(a). *See* R. Doc. No. 77, at 3-4.

indictment to charge one defendant with multiple offenses if they "are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." Fed. R. Crim. P. 8(a). The requirements of Rule 8 are flexible: the offenses "may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship." *See United States v. Butler*, 429 F.3d 140, 146-47 (5th Cir. 2005) (quoting *United States v. Fortenberry*, 914 F.2d 671, 675 (5th Cir. 1990)). The propriety of joinder of offenses under Rule 8 is determined from the face of the allegations in the indictment. *See United States v. Posada–Rios*, 153 F.3d 832, 862 (5th Cir. 1998). This Circuit broadly construes Rule 8 in favor of initial joinder of offenses. *See Butler*, 429 F.3d at 146.

Looking to the face of the allegations in the indictment, it is plain that counts 1 and 2 are properly joined with the remaining counts. The indictment alleges a drug conspiracy that began some time prior to November 1, 2014 and ended on or about October 16, 2015—the date that Alexander was indicted in the Section J case. During the period of the alleged conspiracy, the three individuals named in the indictment died. Eric Ferrara's death was allegedly caused by his ingestion of drugs obtained from Alexander. Alexander allegedly murdered Quandell Beard and Elliot Smith in the course of committing a drug trafficking offense. Ferrara may not have known Beard and Smith. Their deaths occurred approximately eight months apart. Nonetheless, the transaction requirement in Rule 8 "may comprehend a series of many occurrences, depending not so much upon the immediateness of their

connection as upon their logical relationship." *See Butler*, 429 F.3d at 146-147.  The ongoing drug trafficking offense alleged in the second superseding indictment creates such a relationship.

"It is well settled that the joinder of otherwise separate acts may be allowed when the acts are properly linked by means of a conspiracy charge." *United States v. Welch*, 656 F.2d 1039, 1051 (5th Cir. 1981).  The Seventh Circuit has observed that "because of the close relationship between drug trafficking and firearms offenses, joinder of such offenses is ordinarily proper." *United States v. Blanchard*, 542 F.3d 1133, 1141 (7th Cir. 2008).  The Fifth Circuit has also recognized that "[p]roof of a conspiracy count will validate a joinder of substantive offenses growing out of that conspiracy." *United States v. Banks*, 465 F.2d 1235, 1242 (5th Cir. 1972); *see also United States v. Cartwright*, 632 F.2d 1290 (5th Cir. 1980) (permitting joinder of counts of misapplying funds of federally insured institution, falsifying documents, and conspiracy); *United States v. Nettles*, 570 F.2d 547, 552 (5th Cir. 1978) ("Where a substantive count is within the scope of a conspiracy charged then their joinder is proper.").

In order to prove count 1, the government must produce evidence demonstrating the existence of a drug conspiracy.  By the same token, in order to prove counts 3 and 4, the government must first prove the predicate drug offense. *See United States v. Foster*, 507 F.3d 233, 245 (4th Cir. 2007) (setting forth the elements for a violation of 18 U.S.C. § 924(j)).  While counts 3 and 4 do not explicitly reference count 1 as the predicate drug offense, the drug conspiracy charged in count

1 is clearly the predicate offense the government will attempt to prove at trial.  *See* R. Doc. No. 125, at 26 ([T]he indictment alleges that the murders of Quandell Beard and Elliot Smith were committed in furtherance of a drug trafficking conspiracy, namely, count 1 of the indictment.").  As to count 5, the government must prove that Alexander intended for Beard and Smith to be killed as consideration for a promise to pay a quantity of drugs.

The evidence that the government expects to introduce in order to prove each count overlaps with the evidence it will attempt to use to prove the other counts.  In light of the overlap, the Court concludes that there is a sufficient "logical relationship" between the charged offenses, *see Butler*, 429 F.3d at 146-147, to permit their joinder under Rule 8(a).[9]

Alexander also argues that a severance is warranted under Rule 14(a) of the Federal Rules of Criminal Procedure.  Rule 14(a) provides:

> If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires.

Whether offenses should be severed for trial purposes is a determination left to the "sound discretion of the trial court," *United States v. Williamson*, 482 F.2d 508, 512 (5th Cir. 1973), which "must balance any possible prejudice to the defendant against

---

[9] The Court does not at this juncture find that all of the government's evidence is admissible to prove every offense.  The Court will decide the admissibility of particular evidence when raised by an appropriate motion or objection.  In this order, the Court simply recognizes that given the overlap between the evidence required to prove each count, there is a logical relationship between the counts charged in the second superseding indictment.

judicial economy," *United States v. Outler*, 659 F.2d 1306, 1313 (5th Cir. 1981). Usually, any possible prejudice "c[an] be cured with proper instructions and juries are presumed to follow their instructions." *United States v. Bullock*, 71 F.3d 171, 175 (5th Cir. 1995). A district court's decision not to sever counts will only be reversed if "the defendant can convincingly demonstrate that a genuine prejudice to his trial strategy outweighed considerations of judicial economy in proceeding with a single trial." *Williamson*, 482 F.2d at 512. "[T]he defendant bears a heavy burden of showing specific and compelling prejudice." *United States v. Hamilton*, 694 F.2d 398, 401 (5th Cir. 1982).

No severance is required under Rule 14(a) because even if the Court were to sever counts 1 and 2 from the remaining counts, the logical relationship between all of the counts in the indictment means that there would be an evidentiary overlap between the two trials. Where evidence of the severed offenses would be admissible in both trials, the defendant suffers no unfair prejudice by a single trial of all charges. *See United States v. Ramey*, No. 07-20833, 2008 WL 4582089, at *6 (5th Cir. Oct. 15, 2008) (because "the relatedness of the facts here makes it plain that the same facts admissible to prove obstruction of justice would have been admissible in a separate trial for passport fraud," the defendant "was not prejudiced by joinder"); *United States v. Smith*, 281 F. App'x 303, 304-05 (5th Cir. 2008) (joinder of drug charges and murder-for-hire charges did not result in sufficient prejudice to warrant a Rule 14 severance where there was a "logical relationship" between the counts); *Hamilton*, 694 F.2d at 400-01 (holding that "no significant prejudice can have resulted from

denial of the motion to sever" where "evidence relating to the interstate theft count would doubtless have been admissible in a separate trial of the wire fraud charges").

To the extent there is not a complete overlap in the evidence used to prove each count, a limiting instruction should be sufficient to ensure that the jury properly considers the evidence before it.   *See Bullock*, 71 F.3d at 175.   Accordingly, Alexander's Rule 14 motion is denied.

## CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that the motion to dismiss or to sever is **DENIED**.

New Orleans, Louisiana, November 2, 2016.

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**